DREW, J.
_JjBobby Darren Boomer was arrested on two felony drug charges in Bossier Parish on May 18, 2011. His combined bail obligation was fixed at $40,000.
Two days later, Bankers Insurance Company, through its agent, “Across the State Bail Bonds,” agreed to act as Boomer’s surety, posting bonds securing his release and guaranteeing his appearance in court.
It is undisputed that Boomer:
• was given an initial court appearance date of July 19, 2011;[1] but
• did not appear in court on that date or at any time since.
FACTS
We recite here a chronology of the relevant events of the last 30 months:
• May 20, 2011 — Boomer satisfied his bail obligation by posting bond and contractually agreed to be in court on July 19, 2011.
• July 19, 2011 — Boomer failed to appear. A bench warrant issued and a bond forfeiture was ordered,[2] in compliance with La. C. Cr. P. art. 349.2.[3] The forfeiture was in solido against Boomer and his surety.[4]
*1006 [2* September 16, 2011 — The forfeiture judgment was signed and the notice of judgment was properly mailed pursuant to La. C. Cr. P. art. 349.3.
• March 8, 2012 — Bankers was granted 60 additional days to find Boomer.
• May 15, 2012 — A second 60-day extension was granted.
• July 6, 2012 — The court granted an ex parte motion and order to declare the bond forfeiture judgment to be due and payable.[5]
• July 16, 2012 — A third 60-day extension was granted.
• October 1, 2012 — Bankers filed a motion to set aside the forfeiture.[6]
• November 28, 2012 — The motion to set aside the forfeiture was denied.
• December 27, 2012 — Bankers filed a notice of appeal, relative to the trial court’s decision of November 28, 2012.[7]
• July 24, 2013 — Pursuant to our instructions, the trial court signed a judgment denying Bankers additional time to find Boomer.
LLAW AND ARGUMENT
When a surety’s efforts to surrender a defendant are impeded by a fortuitous event, a surety can apply for an extension of time.[8] To define a fortuitous event making performance impossible, Bankers cites La. R.S. 15:83(0(1) and (2),[9] which directs that a surety will not be *1007 liable for failure to perform if the failure is caused by a fortuitous event making performance impossible as long as the event is one that could not have been reasonably foreseen by the surety.[10]
Bankers also compares its situation with another surety who was unable to produce the defendant because of the actions of other | ¿governmental agencies.[11]
In this case, Bankers puts forth cloudy theories that perhaps Boomer was in protective custody of the DEA and working with the State of New York.[12] A previous theory had been that he was being pursued by the DEA for drug crimes.
This record contains no proof that Boomer is in the prison of another jurisdiction and only the hint of a suggestion that he may be in protective custody.[13]
At the hearing on November 28, 2012, Bankers and the State stipulated that, had the two Bankers witnesses testified, they would have recited oral hearsay that Boomer was in protective custody. The trial court was dissuaded by this testimony.
Bankers had 180 days, plus three 60-day extensions, during which to return Boomer to court, which would have satisfied its suretyship obligations.[14]
REASONING
We agree with Bankers that the purpose of bail bonds is not to enrich |fithe State and that bond forfeitures are not favored.
A deal, however, is a deal.
Bankers presumably received a signification commission for agreeing to post bond for a New York resident who faced serious Louisiana drug charges. After all, that is their business.
It cannot have been a surprise that Boomer might return to New York or that he might be amenable to cutting a deal with other law enforcement agencies. The trial court granted three extensions before agreeing with the State that the time for surrendering Boomer had long since expired.
Boomer agreed to appear in court. For money, Bankers agreed to act as his surety and guarantee his court appearance. After 29 months, Boomer is still a no-show. It is past time for Bankers to comply with the surety obligation it undertook.
*1008 On the weak testimonial showing by Bankers, the trial court made no error in denying Bankers any additional time.
DECREE
The trial court’s judgment in favor of the State of Louisiana and against Bobby Darren Boomer, principal, and Bankers Insurance Company, surety, is affirmed, at the cost of Bankers Insurance Company.
AFFIRMED.

. La.C.Cr.P. Art. 344. Right to notice of time and place of defendant’s required appearance
A.When a bail bond fixes an appearance date, the defendant appears as ordered, and notice of the next appearance date is given to the defendant, no additional notice of that appearance date is required to be given to the defendant or the personal surety or the commercial surety or the agent or bondsman who posted the bond for the commercial surety.

. La.C.Cr.P. Art. 346. Court order for arrest of defendant
The court in which the defendant is held to answer may issue a warrant for the arrest and commitment of the defendant who is at large on bail when any of the following are true:
(1) There has been a breach of the bail undertaking.
La.C.Cr.P. Art 349.1 Failure to appear; issuance of arrest warrant
If at the time fixed for appearance the defendant fails to appear as required by the court, the judge may, or shall on motion of the prosecuting attorney, issue a warrant for the arrest of the defendant.

. Art. 349.2. Proof necessary at bond forfeiture hearing
A. Upon motion of the prosecuting attorney, and upon proof of the bail contract, the power of attorney if any, notice to the defendant and the surety as required by Article 344, and the defendant’s failure to appear as required, a bond shall be forfeited and a judgment of bond forfeiture shall be signed.

.La.C.Cr.P. Art. 349 Forfeiture procedure
A. A bond that secures the appearance of a person before a court in the state of Louisiana shall be forfeited and collected as provided by law.
B. The court shall immediately issue a warrant for the arrest of the person failing to appear and order a judgment decreeing the forfeiture of the bond and against the defendant and his sureties in solido for the full amount of the bond.
C. A bail agent who represents the surety as an insurance agent shall not be solidarily liable for the forfeiture of a bond against the defendant and his sureties. In the event that a bail agent who represents the surety as an insurance agent is held solidarily liable, then that bail agent may request to be released from the judgment, and the release of the bail agent shall have no effect on the judgment decreeing the forfeiture of the bond against the defendant and his sureties.

. This motion was presented and the order signed on July 6, 2012, 280 days after the date of mailing the notice of the signing of the judgment of bond forfeiture (September 16, 2011), in full compliance with La. C. Cr. P. art 349.7. A. (1) Enforcement of judgment.

. In brief. Bankers maintains that the relief actually sought was another extension of time.

. The dispositive portion of the appealed judgment merely states: "IT IS ORDERED, ADJUDGED AND DECREED that the surety’s request for additional time to surrender the Defendant herein and/or for relief from the Judgment of Bond Forfeiture is DENIED.”

. La. C. Cr. P. art. 345, Surrender of defendant, provides, in pertinent part:
I. In addition to and notwithstanding any other provision of law, a surety may seek an extension of time to surrender a defendant, or have the judgment of bond forfeiture set aside by filing a motion in the criminal court of record and after contradictory hearing with the district attorney and with proof satisfactory to the court that a fortuitous event has occurred and that the event has made it impossible to perform as required under the contract. A motion seeking relief pursuant to this Paragraph must be filed within three hundred sixty-six days from the date of the fortuitous event, ex-eluding legal delays. The court in its discretion may do any of the following:
(1) Set aside the forfeiture or grant the nullity.
(2) Grant an extension of up to three hundred sixty-six days from the expiration of the initial time period allowed for the surrender of the defendant from the date of the mailing of proper notice of bond forfeiture. If the court grants that extension, judicial interest shall be suspended during that additional time period.
(3) Deny the relief.

.La. R.S. 15:83. Bail bond contracts
A. As criminal bail bonds are contractual and civil in nature, their creation and enforcement are governed both by the laws applicable to civil contracts and by the laws set forth in the statutes and code articles governing criminal procedure.
B. The surety, when entering into a criminal bail bond obligation, must consider the risks of his undertaking and assume those risks reasonably foreseeable.
C.(l) The surety is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible. A surety is, however, liable for his failure to perform when he has assumed the risk of such a fortuitous event.
(2) A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen by the surety.

. In State v. De la Rosa, 43,696 (La.App.2d Cir. 10/22/08), 997 So.2d 165, this court held it was not a fortuitous event exempting the surety when a defendant visited his family in Mexico and was unable to return to the United States. We reasoned that the risk that the defendant would leave the country was foreseeable.

. In State v. Allen, 2011-0693 (La.App.4th Cir.8/8/12), 98 So.3d 926, writ denied, 2012-1995 (La.4/1/13), 110 So.3d 138, our sister circuit affirmed the trial court’s granting a surety an extension because it was likely Allen was in federal protective custody, since he was an unapprehended, unindicted coconspir-ator in a federal drug charge. We further note that our facts provide less support for the position of the bondsmen, as compared with Allen.

. Besides the stipulated hearsay testimony, Bankers had previously produced precious little in support of its position: an undated handwritten letter stating that the N.Y. Dept. of Corrections and Community Supervision was actively engaged in Boomer’s apprehension; an undated letter from a recovery task force indicating that Boomer’s apprehension was forthcoming; and a letter from another bonding company reporting that Boomer had been tracked to Brooklyn, New York — smoke and mirrors.

. See La. C. Cr. P. art. 349.9(A)(2) and La. C. Cr. P. art. 345(D).

. See La. C. Cr. P. art. 349.8(A)(1).