GARRETT, J.
hA bail bond company and its surety appeal from a trial court judgment which declined to annul a judgment of bond forfeiture against the surety after the court found that there was no fortuitous event relieving it from its bond obligations. We affirm the trial court judgment.
FACTS
On June 5, 2010, Billy Ray Benefield, Jr., was arrested in Bossier Parish for DWI-4th Offense, driving under suspension (DUS), and speeding. Following Benefield’s initial court appearance “via video” on June 7, 2010, appearance bonds were posted on his behalf by Across the State Bail Bonds (ASBB) as bondsman and Bankers Insurance Company as surety, and Benefield was released from the custody of the Bossier Parish Sheriffs Office (BPSO). The guaranty appearance bond on the DWI-4th Offense, which was signed by Benefield and by Donald Whitaker on behalf of ASBB and Bankers, listed an address in Ashdown, Arkansas, for Bene-field. Additional bonds were posted for the DUS and speeding charges.
Benefield was later charged by the Bossier Parish District Attorney (BPDA) with DWI-lst Offense, a misdemeanor, instead of the DWI-4th Offense felony charge for which he was arrested and on which the bond was provided.
Benefield failed to appear in court in September 2010. A bench warrant and bond forfeiture were ordered. In November 2010, a judgment of bond forfeiture was granted against Benefield and the bonding company. However, for reasons which do not appear in the appellate record, this judgment was subsequently set aside and the bench warrant was recalled.
liiOn May 2, 2012, Benefield failed to appear in court again,[1] and another bench warrant and bond forfeiture were ordered. On May 30, 2012, a judgment of bond forfeiture was rendered against Benefield as principal and Bankers Insurance Company as surety.[2] As will be explained below, efforts by the bail bondsmen to surrender Benefield in order to exonerate the surety from liability on the bond obligation were unsuccessful.
On April 22, 2013, ASBB — individually and as agent for Bankers Insurance Company — filed a Petition to Annul the Judgment of Bond Forfeiture in a separate civil suit. The crux of the petition was that the reduction of the felony charge of DWI-4th Offense to a misdemeanor charge of DWI- *432 1st Offense resulted in the bail bondsmen’s inability to surrender Benefield. The petition alleged that, because Benefield’s misdemeanor DWI-lst Offense charge was not entered in the National Crime Information Center (NCIC) registry, authorities in Arkansas — where Benefield lived— would not allow the bonding agents to apprehend and detain him for extradition to Louisiana. It further asserted that the bonding agents were unable to surrender Benefield to the jurisdiction of Bossier Parish due to th’#Vctions of the BPDA in reducing the charge to a misdemeanor and that those actions were beyond their control. Consequently, the plaintiffs alleged that all those actions constituted a “fortuitous event” under La. R.S. 15:88 and La. C. Cr. P. art. 345(1), which made it impossible for them to surrender ¡.¡Benefield within the time period allowed by law. They further contended that the actions of the BPDA constituted fraud or ill practices, making the judgment of forfeiture subject to annulment under La. C.C.P. art. 2004. They requested that the May 30, 2012, judgment of bond forfeiture be annulled and that they be exonerated from liability on their bail obligations. A hearing on the petition was set for May 15, 2013. The BPDA filed a general denial on May 1, 2013.
At the May 15, 2013, hearing, the plaintiffs presented the testimony of two witnesses: Donald Whitaker, the owner of ASBB, and Anthony Bowers, the owner of Four Aces Bail Bonds (FABB). According to the testimony, ASBB is a subcontractor of FABB. Whitaker testified that he issued bonds to secure Benefield’s release after he was arrested in June 2010 and that one was a felony bond in the amount of $10,000 for a charge of DWI-4th Offense. After Benefield failed to show up for court, Whitaker tried to put him in the NCIC registry. However, because the felony charge had been reduced to a misdemeanor, the BPSO would not put Benefield in the NCIC registry. Although Benefield was actually located in Arkansas as part of a “stakeout” by the bail bondsmen, Bowers testified that they were unable to obtain assistance from law enforcement in that state to secure Bene-field’s return to Louisiana. Bowers explained that before making entry into a house to retrieve a fugitive, they must notify local law enforcement officers, who verify through the NCIC registry that there is a felony warrant on the fugitive. Bowers testified that even though the forfeiture judgment referred to a felony charge, the BPSO refused to put the warrant in the |4NCIC registry when he tendered the $25 fee, instead suggesting that he talk to Marilyn Lee in the BPDA’s Office. According to Bowers, Lee said that the reduced charge could not be placed in the NCIC registry. Bowers testified that, as a result, he could not apprehend and return Benefield within the six-month window allowed by law. The state presented no witnesses. The trial court ordered the parties to brief the issues and took the matter under advisement.
On June 11, 2013, the trial court provided detailed and cogent reasons for the ruling made in open court. It found no fraud or ill practices by the BPDA’s office. Furthermore, it found that the reduction of charges by the BPDA was a “very common occurrence” and not a “fortuitous event” under La. R.S. 15:83. As a result, the trial court upheld the bond forfeiture. A judgment denying the plaintiffs’ petition to.annul the judgment of bond forfeiture and upholding the bond forfeiture was signed on August 14, 2013.
The plaintiffs appeal.
LAW
La. C. Cr. P. art. 349.8(A)(1) states:
*433 For bonds that have a face value under fifty thousand dollars, a judgment forfeiting the appearance bond shall at any time, within one hundred eighty days after the date of mailing the notice of the signing of the judgment of bond forfeiture, be fully satisfied and set aside upon the surrender of the defendant or the appearance of the defendant. The surrender of the defendant also relieves the surety of all obligations under the bond and the judgment.
La. C. Cr. P. art. 349.9 provides:
A. A judgment decreeing the forfeiture of an appearance bond shall not be rendered if it is shown to the satisfaction of the court that the defendant, principal in the bond, is prevented from attending because of any of the following:
|R(1) He has a physical disability, illness, or injury.
(2) He is being detained in the jail or penitentiary of another jurisdiction.
(3) He is serving in the armed forces of the United States.
(4) He is a member of the Louisiana National Guard called to duty pursuant to R.S. 29:7. This provision does not apply to appearances in a state military court.
B. An affidavit by the jailer, warden, or other responsible officer where the principal is detained, or commanding officer, attesting to the cause of the failure to appear of the defendant shall be considered adequate proof of the inability to appear by the defendant.
C. If a judgment of bond forfeiture is rendered while the defendant is prevented from appearing for any reason enumerated in this Article, and if the defendant or his sureties file a motion to set aside the judgment of bond forfeiture within one hundred eighty days after the date of the mailing the notice of the signing of the judgment of bond forfeiture, and it is shown to the satisfaction of the court that the defendant was prevented from attending for any cause enumerated in this Article, the court shall declare the judgment of bond forfeiture null and void.
La. R.S. 15:83 states, in relevant part:
B. The surety, when entering into a criminal bail bond obligation, must consider the risks of his undertaking and assume those risks reasonably foreseeable.
C. (1) The surety is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible. A surety is, however, liable for his failure to perform when he has assumed the risk of such a fortuitous event.
(2) A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen by the surety. [Emphasis added.]
In pertinent part, La. C. Cr. P. art. 345 states:
G. During the period provided for surrendering the defendant, the surety may request that the officer originally charged with the detention of a felony defendant place the name of the felony defendant into the National Crime Information Center registry. The surety shall pay to that officer a fee of twenty-five dollars for processing the placement. If, after payment of the twenty-five-dollar fee, the name of the defendant is removed from the National Crime Information Center registry without cause during the period provided [fifor surrendering the defendant, the surety shall be relieved of all obligations under the bond.
[[Image here]]
I. In addition to and notwithstanding any other provision of law, a surety may *434 seek an extension of time to surrender a defendant, or have the judgment of bond forfeiture set aside by filing a motion in the criminal court of record and after contradictory hearing with the district attorney and with proof satisfactory to the court that a fortuitous event has occurred and that the event has made it impossible to perform as required under the contract. A motion seeking relief pursuant to this Paragraph must be filed within three hundred sixty-six days from the date of the fortuitous event, excluding legal delays. The court in its discretion may do any of the following:
(1) Set aside the forfeiture or grant the nullity.
(2) Grant an extension of up to three hundred sixty-six days from the expiration of the initial time period allowed for the surrender of the defendant from the date of the mailing of proper notice of bond forfeiture. If the court grants that extension, judicial interest shall be suspended during that additional time period.
(3) Deny the relief. [Emphasis added.]
DISCUSSION
We note at the outset that none of the reasons recognized by our legislature for nullifying a judgment of bond forfeiture under La. C. Cr. P. art. 349.9 apply in this case. The plaintiffs argue that the actions of the BPDA constituted a “fortuitous event” under La. C. Cr. P. art. 345(1) and La. R.S. 15:83, which could not have been reasonably foreseen at the time the surety contract was made. They fault both the BPDA and the BPSO for. their alleged failure to assist them in apprehending Benefield. In support of their argument, they cite State v. Allen, 2011-0693 (La. App. 4th Cir.8/8/12), 98 So.3d 926, writ denied, 2012-1995 (La.4/1/13), 110 So.3d 138, in which the surety encountered difficulty in timely producing to state authorities a defendant who had apparently become a cooperating witness in a federal case and been placed in federal protective custody. The trial court |7granted the surety’s motion to set aside the bond forfeitures. It accepted the surety’s argument that the delay in surrendering the defendant was caused by a “fortuitous event” under La. C. Cr. P. art. 345(1), that event being the action of another governmental entity. The appellate court affirmed.
The plaintiffs also cite State v. Harris, 2003-2328 (La.App. 1st Cir.9/17/04), 887 So.2d 519, for the proposition that the BPSO should have entered the defendant’s name in the NCIC registry when such was requested and the fee was tendered. However, that case involved a charge of bank fraud, which is a felony, for which there was a $40,000 appearance bond. The $25 fee was tendered to the sheriffs office, which did not enter the information in the NCIC registry because a representative of the district attorney’s office instructed it not to honor such requests from bonding agents. The trial court denied the surety’s motion to be discharged from its obligation. The court of appeal reversed, finding that the sheriffs office was required to enter the name into the registry after a request was properly made and after the processing fee was accepted. Failure to do so was tantamount to removing the defendant’s name from the NCIC registry. The appellate court specifically declined to address situations where the sheriffs office refused to accept the fee and informed the person making the request that it would not be honored.
The state contends that felony charges are reduced all the time and, since Bene-field provided an Arkansas address on the bail bond agreement, the plaintiffs should have known that the instant situation could *435 arise. Furthermore, the state argues that control of the NCIC registry entry belongs |Rto the sheriff’s office and that the district attorney’s office has no authority to enter or refuse to enter a name or warrant.
Like the trial court, we fully agree with the state’s position. The record reveals that the surety was completely aware that Benefield lived in another state when it bonded him out of a Louisiana jail on several arrest charges, only one of which was a felony. The bonding agreement stipulated that “defendant shall not leave the state without permission of this court.” Nothing in the record indicates Benefield or the surety obtained such permission.[3] As noted by the trial court, reduction by the prosecutor of an initial arrest charge to a lesser offense is a daily, commonplace occurrence in the criminal justice system. Also, it is not unheard of for an out-of-state defendant to fail to return to this state for court appearances.[4] When entering into a criminal bail bond obligation, a surety “must consider the risks of his undertaking and assume those risks reasonably foreseeable.” La. R.S. 15:83(B). Furthermore, La. C. Cr. P. art. 345(G) permits a surety to 19request placement in the NCIC registry of the name of only a “felony defendant.” As a result, in this case where a felony charge was reduced to a misdemeanor after the defendant was released on bond, we cannot conclude that the trial court erred in refusing to find that there was a “fortuitous event” which the surety “could not have ... reasonably foreseen” and which made performance impossible under La. R.S. 15:83(0 and La. C. Cr. P. art. 345(I).[5]
Furthermore, like the trial court, we find no basis for annulling the bond forfeiture judgment for fraud or ill practices under La. C.C.P. art. 2004. Neither the BPDA’s actions in reducing Benefield’s charge from DWI-4th Offense to DWI-lst Offense, nor the BPSO’s refusal to place the name of Benefield, a misdemeanor defendant, into the NCIC registry amount to “some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right.” Yellowbird Investments, L.L.C. v. Barber, 46,977 (La.App. 2d Cir.3/14/12), 87 So.3d 970, writ not considered, 2012-0866 (La.6/1/12), 90 So.3d 422. Accordingly, we affirm the trial court judgment.
*436 CONCLUSION
The trial court judgment is affirmed. Costs are assessed to the plaintiffs, Across the State Bail Bonds and Bankers Insurance Company.
AFFIRMED.

. According to the criminal court minutes filed in the record before us, Benefield never appeared in court after he was bonded out on June 7, 2010.

. The judgment lists the charges against Benefield as "DWI 4th, DUS AND SPEEDING” and recites the bonds for these offenses as being, respectively, $10,000, $400, and $150. Judgment was given in the amount of $10,550, together with legal interest from date of judgment, plus all costs.

. See La. C. Cr. P. art. 326(A), which provides that one of the conditions of bail undertaking is that the defendant "will not leave the state without written permission of the court.”

. See State v. Bobby Darren Boomer, Bankers Ins. Co., 48,555 (La.App. 2d Cir. 1/15/14), 130 So.3d 1004. There the same bail bond company and surety as in the instant case bonded out a New York resident who thereafter failed to appear in court. In affirming the trial court’s refusal to set aside the bond forfeiture, this court observed that it "cannot have been a surprise that Boomer might return to New York....”
See also State v. De La Rosa, 43,696 (La. App. 2d Cir. 10/22/08), 997 So.2d 165, in which this court held:
[T]he risk that a defendant, particularly an alien defendant, will flee the jurisdiction of the court, possibly to his native country, and fail to make a court appearance is an obvious and foreseeable risk involved in a bail bond obligation. Such a risk must be contemplated by the surety when entering into the bail bond obligation. Therefore, the possibility that a defendant will travel to his native country and not be able to return to the jurisdiction of our courts is not a fortuitous event.

.We also take note of the relatively new offense of out-of-state bail jumping, La R.S. 14:110.1.1, which became effective August 15, 2010. Under this statute, Benefield’s refusal to return to Louisiana could have been construed as a felony offense for which the bonding agents and surety could have sought his prosecution.